IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:11-CV-59-D

| | | |
|---|---|---|
| FIREMEN'S INSURANCE COMPANY OF WASHINGTON D.C., and UNION INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | **ORDER** |
| GLEN-TREE INVESTMENTS, LLC, DICKY S. WALIA, SANJAY N. MUNDRA, PERKINS & WILL NORTH CAROLINA, INC., and PERKINS & WILL, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

Firemen's Insurance Company of Washington, D.C., ("Firemen's") and Union Insurance Company ("Union") (collectively, "plaintiffs") ask the court to declare that they are not obligated to defend or indemnify Glen-Tree Investments, LLC ("GTI"), Dicky S. Walia ("Walia"), and Sanjay N. Mundra ("Mundra") (collectively, "defendants") in litigation in Mecklenburg County Superior Court stemming from a construction project. According to the amended complaint filed in Mecklenburg County Superior Court, Walia and Mundra are principals and agents of GTI. See [D.E. 1-2] ¶¶ 4–5, 10. Perkins & Will North Carolina, Inc. and Perkins & Will, Inc. are affiliated companies that provided architectural design services to GTI and, thereafter, sued GTI, Walia, and Mundra in Mecklenburg Country Superior Court to collect payment for their services.

Firemen's and Union filed a motion for judgment on the pleadings, which Walia and Mundra oppose. Walia and Mundra filed a motion to amend their answer, which Firemen's and Union oppose. As explained below, Walia and Mundra's motion to amend is denied, and Firemen's and Union's motion for judgment on the pleadings is granted.

I.

On February 14, 2005, GTI hired Perkins & Will, Inc., ("PW") to provide architectural design services for a mixed-use development in Raleigh, North Carolina, called the Soleil Center. See id. ¶¶ 10–11, 25–31.[1] On July 1, 2008, GTI suspended work on the Soleil Center because GTI could not secure construction financing. Id. ¶ 21. GTI attempted to obtain alternative financing, but ultimately terminated the Soleil Center as designed by PW and proceeded with a smaller development. Id. ¶ 22.

On December 20, 2008, PW filed suit against GTI in Mecklenburg County Superior Court seeking payment under its contract with GTI. Id. ¶ 23; see Compl. [D.E 1] ¶ 11. On May 1, 2009, GTI filed an answer denying liability and asserted counterclaims. [D.E. 1-2] ¶ 24. Thereafter, GTI repeatedly failed to comply with discovery orders, and on June 11, 2010, the Mecklenburg County Superior Court sanctioned GTI by striking its answer and entering default against GTI. See Compl. ¶ 13; [D.E. 1-1].

On July 1, 2010, PW filed an amended complaint in Mecklenburg County Superior Court, in which it added Walia and Mundra as defendants. See [D.E. 1-2]. In the amended complaint, PW seeks damages for breach of contract, id. ¶¶ 77–82, breach of a covenant of good faith and fair dealing, id. ¶¶ 83–87, and unfair and deceptive trade practices, id. ¶¶ 101–105, as well as damages in quantum meruit. Id. ¶¶ 88–98. In order to collect the alleged damages, PW also seeks enforcement of a real-property lien, id. ¶¶ 72–76, enactment of an equitable lien, id. ¶¶ 99–100, and piercing of the corporate veil. Id. ¶¶ 106–109.

---

[1] On September 22, 2006, PW assigned the Soleil Center contract to one of its subsidiaries, Perkins & Will North Carolina, Inc. ("PWNC"). Id. ¶ 20. For simplicity's sake, the court refers collectively to PW and PWNC as PW.

2

Firemen's issued a commercial general liability policy listing GTI and the Soleil Group, Inc., (the "Soleil Group") as named insureds, with effective dates of January 27, 2005, to June 27, 2005 (the "Firemen's Policy"). See Compl. ¶ 22; [D.E. 1-3] 9. Union issued a commercial general liability policy listing GTI and the Soleil Group as named insureds, with effective dates of June 27, 2006 to June 27, 2009 (the "Union Policy"). See Compl. ¶¶ 35–38; [D.E. 1-5] 32, 35; [D.E. 1-11] 2, 7; [D.E. 2] 27, 30.[2] Walia and Mundra, to the extent they were acting within the scope of their duties as either members of GTI or officers of the Soleil Group, are additional named insureds under the Firemen's Policy and the Union Policy (collectively, the "Policies"). See, e.g., [D.E. 1-4] 5; [D.E. 1-8] 31; Compl. ¶¶ 33, 49. Under the Policies, plaintiffs agree to pay "those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." E.g., [D.E. 1-4] 1; [D.E. 1-8] 23; see Compl. ¶¶ 24, 40. Plaintiffs "have the right and duty to defend the insured against any 'suit' seeking those damages. However, [plaintiffs] . . . have no duty to defend the insured against any 'suit' seeking damages for . . . 'property damage' to which this insurance does not apply." E.g., [D.E. 1-4] 1; [D.E. 1-8] 23.

On or about May 14, 2010, plaintiffs received notice of PW's suit in Mecklenburg County Superior Court against defendants. See [D.E. 39-2] 2; cf. Compl. ¶ 21 (alleging May 13, 2010). On June 20, 2010, plaintiffs notified Walia and Mundra that they were investigating the lawsuit, and they reserved their rights to deny coverage. See [D.E. 39-2] 9–10, 15–16; see also Compl. ¶ 21; Walia Answer [D.E. 21] ¶ 21; Mundra Answer [D.E. 22] ¶ 21. On August 30, 2010, plaintiffs notified Walia and Mundra that they had hired the law firm of Dean & Gibson to provide a legal

---

[2] Union issued three consecutive policies, but the material terms in each policy are identical. See Compl. ¶¶ 35–39. Accordingly, the court treats Union's three policies collectively as the Union Policy. See id.

3

defense to defendants, but that plaintiffs were, again, reserving their rights to deny coverage. See [D.E. 39-2] 1–2, 7; see also Compl. ¶ 21; Walia Answer ¶ 21; Mundra Answer ¶ 21.

On March 18, 2011, plaintiffs filed this suit in the United States District Court for the Eastern District of North Carolina seeking a declaration that the Policies afford no coverage to defendants in the underlying action, and that plaintiffs have no duty to defend or indemnify defendants in the underlying action. See Compl. ¶ 52. On March 25, 2011, Dean & Gibson moved to withdraw from their representation of Walia and Mundra in the Mecklenburg County Superior Court. See [D.E. 39-1] 4–5. The Mecklenburg County Superior Court granted the motion, subject to the conditions that Dean & Gibson (1) continue to represent Walia and Mundra through scheduled depositions on March 29 and 30, 2011, and (2) take "steps . . . reasonably practicable to protect each client's interests." See id. 2–3. On April 29, 2011, Dean & Gibson notified the Mecklenburg County Superior Court that it had represented Walia and Mundra at their depositions, taken steps to protect their rights, given them adequate notice and time to retain replacement counsel, and that it now was withdrawing as counsel. See id. 8–9.

On June 1, 2011, Walia and Mundra, proceeding pro se, filed separate answers to plaintiffs' complaint [D.E. 21, 22]. On June 7, 2011, plaintiffs moved for entry of default judgment against GTI because GTI failed to respond to plaintiffs' complaint [D.E. 23]. On July 12, 2011, the Clerk of Court entered default against GTI [D.E. 25]. On August 28, 2011, plaintiffs moved for default judgment against GTI [D.E. 28]. On October 28, 2011, the court granted default judgment against GTI and declared that plaintiffs had no duty to defend or indemnify GTI in the underlying action [D.E. 30].

On November 28, 2011, Walia and Mundra, represented by counsel, moved to amend their answers to add a counterclaim alleging that plaintiffs breached their duty to defend under the Policies

4

[D.E. 33, 34]. On December 22, 2011, plaintiffs responded in opposition [D.E. 39].

On January 31, 2012, plaintiffs moved for judgment on the pleadings against Walia and Mundra [D.E. 40]. On February 21, 2012, Walia and Mundra responded in opposition [D.E. 42]. On March 8, 2012, plaintiffs replied [D.E. 43].

II.

Walia and Mundra move to amend their answers to add a counterclaim. See Mem. Supp. Mot. Amend [D.E. 37]. Plaintiffs oppose the motion and cite this court's scheduling order and Federal Rule of Civil Procedure 16. See Pls.' Resp. [D.E. 39] 2–5.

Provided certain time requirements are met, a party may amend a pleading once as a matter of course. See Fed. R. Civ. P. 15(a)(1). However, when a party files a motion to amend a pleading "after the deadlines provided by a scheduling order have passed, [Rule 16(b)'s] good cause standard must be satisfied to justify leave to amend the pleadings." Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008). Here, the court's scheduling order required that motions "to amend pleadings . . . be made promptly after the information giving rise to the motion becomes known to the party or counsel. Any such motion filed after October 3, 2011, must meet the standards of Fed. R. Civ. P. 15 and 16." [D.E. 27] 2. Therefore, Walia and Mundra's motion to amend, which they filed on November 28, 2011, must meet Rule 16(b)'s good cause standard.

"Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." Montgomery v. Anne Arundel Cnty., 182 F. App'x 156, 162 (4th Cir. 2006) (per curiam) (unpublished). Good cause exists when a party's reasonable diligence before the expiration of the amendment deadline would not have resulted in the discovery of the evidence supporting a proposed amendment. United States v. Godwin, 247 F.R.D. 503, 506 (E.D.N.C. 2007); see Stonecrest

Case 7:11-cv-00059-D   Document 44   Filed 09/19/12   Page 5 of 15

Partners, LLC v. Bank of Hampton Roads, 770 F. Supp. 2d 778, 784 (E.D.N.C. 2011). The burden to demonstrate good cause is on the moving party. Godwin, 247 F.R.D. at 506. Prejudice, futility, and bad faith are Rule 15(a) considerations, and the court will not consider them unless the movant meets its initial burden of demonstrating "good cause" under Rule 16(b). See Nourison Rug Corp., 535 F.3d at 299; Stonecrest Partners, 770 F. Supp. 2d at 784–85.

Walia and Mundra's sole reason for moving to amend their answers after the October 3, 2011 deadline is that they did not recognize the potential counterclaim until they had retained counsel, which was after the deadline. See Mem. Supp. Mot. Amend 3; cf. [D.E. 31] (notice of appearance on November 28, 2011). However, Walia and Mundra's failure to timely recognize the counterclaim falls "short of what is required to satisfy the good cause standard." Nourison Rug Corp., 535 F.3d at 298; see Stonecrest Partners, 770 F. Supp. 2d at 784. Accordingly, Walia and Mundra's motion to amend their answers to add a counterclaim is denied.

### III.

Plaintiffs move for judgment on the pleadings and argue that the pleadings and incorporated materials establish that the Policies do not obligate them to defend or indemnify Walia and Mundra in the underlying action. See Mem. Supp. Mot. J. Pleadings [D.E. 41] 1. Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings should be granted if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Park Univ. Enters. v. Am. Cas. Co. of Reading, 442 F.3d 1239, 1244 (10th Cir. 2006) (quotation omitted); United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000). The court may consider the pleadings along with any materials referenced in or attached to the

pleadings, which are incorporated by reference. See Fed. R. Civ. P. 10(c). A court also may consider "matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); see also Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005); Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991).

The same standard of review applies under Rule 12(b)(6) and Rule 12(c). See, e.g., Booker v. Peterson Cos., 412 F. App'x 615, 616 (4th Cir. 2011) (per curiam) (unpublished); Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002). When a court reviews a motion for judgment on the pleadings, it must "construe the facts and reasonable inferences . . . in the light most favorable to the [non-moving party]." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997); see Booker, 412 F. App'x at 616; Burbach, 278 F.3d at 406. Nevertheless, when analyzing a motion for judgment on the pleadings, a court must determine whether a pleading is legally and factually sufficient. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563–70 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–80, 684 (2009) ("Our decision in Twombly expounded the pleading standard for all civil actions." (quotation omitted)); Booker, 412 F. App'x at 616; Demetry v. Lasko Prods., Inc., 284 F. App'x 14, 15 (4th Cir. 2008) (per curiam) (unpublished). Thus, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Booker, 412 F. App'x at 616; Demetry, 284 F. App'x at 15. Moreover, a court need not accept a pleading's legal conclusions drawn from the facts. Iqbal, 556 U.S. at 678–79; Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); see Demetry, 284 F. App'x at 15. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted).

The parties do not dispute the Policies' language or PW's allegations in the underlying litigation. The case concerns whether the Policies obligate plaintiffs to defend and indemnify defendants against PW's allegations. Plaintiffs argue that the Policies do not cover PW's allegations because (1) PW's pleadings did not include allegations that impose upon defendants liability for "property damage" and (2) PW did not allege damages caused by an "occurrence." See Mem. Supp. Mot. J. Pleadings 7, 12.

The court has jurisdiction based on diversity, and North Carolina law governs plaintiffs' claims. Thus, this court must determine how the Supreme Court of North Carolina would rule. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). "If the Supreme Court of [North] Carolina has spoken neither directly or indirectly on the particular issue before us, [this court is] called upon to predict how that court would rule if presented with the issue." Id. (quotation omitted). In making that prediction, the court may consider opinions of the North Carolina Court of Appeals, treatises, and the practices of other states. Id.

An insurance policy is a contract, and the policy's provisions govern the rights and duties of the contracting parties. Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000); C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co., Inc., 326 N.C. 133, 142, 388 S.E.2d 557, 562 (1990). An insurer has a duty to defend when pleadings allege facts that impose upon an insured a liability covered by the policy. Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986). Thus, the court compares the pleadings with the policy to see whether the allegations describe facts which fall within the insurance coverage. Waste Mgmt., 315 N.C. at 693, 340 S.E.2d at 378; C.D. Spangler, 326 N.C. at 154, 388 S.E.2d at 570. Where the policy defines a term, the court must apply that definition. Gaston Cnty. Dyeing, 351 N.C. at 299, 524 S.E.2d at 563; C.D. Spangler, 326 N.C. at 142, 388 S.E.2d at 563. If

the meaning of the policy is clear on its face, the policy must be enforced as written. See Gaston Cnty. Dyeing, 351 N.C. at 300, 524 S.E.2d at 563; C.D. Spangler, 326 N.C. at 142, 388 S.E.2d at 563.

Under the Policies, plaintiffs' duties to defend and indemnify arise when defendants are liable for "'property damage' to which this insurance applies." E.g., [D.E. 1-4] 1; [D.E. 1-8] 23; see Compl. ¶¶ 24, 40. The Policies define "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property," and "[l]oss of use of tangible property that is not physically injured." E.g., [D.E. 1-4] 8–9; [D.E. 1-8] 37. In addition, the Policies cover "property damage" only if the "'property damage' is caused by an 'occurrence.'" E.g., [D.E. 1-4] 1; [D.E. 1-8] 23; see Compl. ¶¶ 25, 41. The Policies define an "occurrence" as "an accident." E.g., [D.E. 1-4] 8; [D.E. 1-8] 36.[3]

Essentially, PW's amended complaint alleges that Walia and Mundra, acting on behalf of GTI, refused to pay PW for its design services in accordance with the contract, and made certain misrepresentations during the design process to induce PW to continue to perform. See [D.E. 1-2] ¶¶ 11–71. PW alleges Walia and Mundra are liable for damages on the theories of breach of contract, id. ¶¶ 77–82, breach of an implied covenant of good faith and fair dealing, id. ¶¶ 83–87, unfair and deceptive trade practices, id. ¶¶ 101–05, as well as damages in quantum meruit. Id. ¶¶ 88–98. With these claims in mind, the court addresses whether the Policies provide coverage.

---

[3] Union's policy also states that Union "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury.'" E.g., [D.E. 1-8] 27. "Personal and advertising injury" is defined to include "[f]alse arrest, detention or imprisonment," "[m]alicious prosecution," "wrongful eviction," "slander[] or libel[]," violation of "a person's right of privacy," "use of another's advertising idea in your 'advertisement,'" or "[i]nfringing on another's copyright, trade dress or slogan in your 'advertisement.'" E.g., id. 36. Walia and Mundra do not contend that PW seeks damages in the underlying action for "personal and advertising injury." See Defs.' Resp. Mot. J. Pleadings [D.E. 42].

9

The Policies provide coverage only for physical damage to, or loss of use of, tangible property. PW's pleadings, however, do not allege physical damage to, or loss of use of, tangible property. Rather, PW alleges economic losses. Although the Supreme Court of North Carolina has yet to state explicitly that economic losses do not qualify as "property damage," the North Carolina Court of Appeals has held that economic losses are not "property damage." See Prod. Sys., Inc. v. Amerisure Ins. Co., 167 N.C. App. 601, 606, 605 S.E.2d 663, 666 (2004) (holding that "property damage" does not include "the expense of . . . completing a project that was not done correctly or according to contract"); Holt ex rel. Holt v. Atl. Cas. Ins. Co., 141 N.C. App. 139, 143, 539 S.E.2d 345, 348 (2000) (holding that "damages sustained by reason of paying . . . medical expenses" do not qualify as property damage); Hobson Constr. Co., Inc. v. Great Am. Ins. Co., 71 N.C. App. 586, 590–91, 322 S.E.2d 632, 635 (1984) (holding that damages for breach of contract are not "property damage"). For example, in Hobson, after a construction company built a poorly designed dam for some land owners, the land owners sued the construction company for breach of contract. 71 N.C. App. at 587, 322 S.E.2d at 633. The land owners sought damages for the cost of repairing and completing the faulty dam, and the construction company sought coverage under its insurance policy, arguing that such damages were for "property damage." See id. at 587–90, 322 S.E.2d at 633–35. The North Carolina Court of Appeals disagreed and held that damages for the alleged breach of contract were not "property damage." Id. at 590–91, 322 S.E.2d at 635. In reaching this conclusion, the Court of Appeals noted that the "pleadings do not allege physical injury or destruction of tangible property . . . [or] 'loss of use' of tangible property." Id. at 591, 322 S.E.2d at 635.

As in Hobson, the underlying pleadings do not allege destruction of tangible property, or loss of use of tangible property, but instead seek damages for economic losses stemming from a breach of contract. Thus, the Policies do not provide coverage. This conclusion is consistent not only with

10

North Carolina Court of Appeals' precedent, but also with decisions from other federal courts in North Carolina construing North Carolina law. See Am. Motorists Ins. Co. v. Asalone, No. 1:04CV28, 2004 WL 3197546, at *5 (W.D.N.C. Dec. 10, 2004) (unpublished) (determining that misrepresentation resulting in property's devaluation was an economic loss, and not "property damage" under an insurance policy); In re Russell, 285 B.R. 877, 884 (Bankr. M.D.N.C. 2001) ("[E]conomic loss claims such as lost profits, loss of an investment or loss of the anticipated benefit of a bargain . . . do not constitute property damage for purposes of insurance coverage."). Accordingly, because PW did not allege that defendants are liable for "property damage," plaintiffs are not obligated to defend and indemnify Walia and Mundra in the underlying action.

Furthermore, the Policies provide coverage only for "property damage" caused by an "occurrence." The Policies define an "occurrence" as an "accident." E.g., [D.E. 1-4] 8; [D.E. 1-8] 36. Although the Policies do not further define "accident," North Carolina courts have defined an "accident" as an unexpected or unintended injury from the standpoint of the insured. See Waste Mgmt., 315 N.C. at 695, 340 S.E.2d at 379–80; Holz-Her U.S., Inc. v. U.S. Fid. & Guar. Co., 141 N.C. App. 127, 129, 539 S.E.2d 348, 350 (2000); Henderson v. U.S. Fid. & Guar. Co., 124 N.C. App. 103, 110, 476 S.E.2d 459, 463–64 (1996); see also Gaston Cnty. Dyeing, 351 N.C. at 302, 524 S.E.2d at 564. Thus, an "occurrence" does not include "an intentional act that is either intended to cause injury or substantially certain to result in injury." Henderson, 124 N.C. App. at 110, 476 S.E.2d at 464.

Here, PW does not allege an "occurrence." Rather, PW alleges that its economic losses were the intended result of defendants' intentional conduct. "Intent to injure may be inferred as a matter of law from the intent to act, and such is a reasonable inference in this case." Henderson, 124 N.C. App. at 111, 476 S.E.2d at 464 (citation omitted); see Holz-Her, 141 N.C. App. at 131, 539

11

S.E.2d at 351. Defendants' alleged conduct—both in allegedly making misrepresentations to PW and refusing to compensate PW for its design work—was "so substantially certain to cause [economic losses for PW] as to infer an intent to injure as a matter of law." Henderson, 124 N.C. App. at 111, 476 S.E.2d at 464; see Holz-Her, 141 N.C. App. at 131, 539 S.E.2d at 351. Accordingly, PW did not allege damages caused by an "occurrence," and plaintiffs are not obligated to defend and indemnify Walia and Mundra in the underlying action.

In opposition to these conclusions, Walia and Mundra argue that plaintiffs are barred from refusing to defend and indemnify them in the underlying litigation because of bad faith, estoppel, waiver, and laches. Walia and Mundra also argue that plaintiffs cannot now change course because Walia and Mundra "relied on the [p]laintiffs for almost seven months for [their] defense in this matter and have/will suffer irreparable harm and damages as [they] had to turn over discovery documents without review for privilege by [Dean & Gibson]." Walia Answer 9; Mundra Answer 9.

First, Walia and Mundra assert that plaintiffs are "barred [from refusing to defend] to the extent that they have acted in bad faith." Walia Answer 9; Mundra Answer 9. "Upon defending its insured, the insurer has a duty to act diligently and in good faith to its insured. The insurer has a duty to safeguard the interests of its insured." Wilson v. Wilson, 121 N.C. App. 662, 667, 468 S.E.2d 495, 498 (1996) (citation omitted). North Carolina recognizes a cause of action for an insurer's breach of its duty to defend in good faith. See, e.g., Wilson v. State Farm Mut. Auto. Ins. Co., 327 N.C. 419, 425, 394 S.E.2d 807, 811 (1990); Wynnewood Lumber Co. v. Travelers' Ins. Co., 91 S.E. 946, 947 (N.C. 1917). In fact, Walia and Mundra unsuccessfully attempted to assert this cause of action by moving to amend their answers. See Mem. Supp. Mot. Amend 2. However, Walia and Mundra have not cited a single case in which a North Carolina court recognized "bad faith" as an

12

affirmative defense to an insurer's claim that it has no obligation to defend an insured. Thus, the court declines to recognize "bad faith" as an affirmative defense under Rule 8(c). See Fed. R. Civ. P. 8(c); Hartford Fire Ins. Co. v. Annapolis Bay Charters, Inc., 69 F. Supp. 2d 756, 762–63 (D. Md. 1999) (applying Maryland law and rejecting "bad faith" as an affirmative defense against insurer's refusal to defend); cf. Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314–15 (4th Cir. 2007) (sitting in diversity, a federal court should not create or expand a State's common law or public policy).

Next, Walia and Mundra argue that plaintiffs should be barred from refusing to defend and indemnify them based on the doctrines of waiver and estoppel. "Waiver is the voluntary, intentional relinquishment of a known right, while estoppel refers to an abatement raised by law of rights and privileges of the insurer where it would be inequitable to permit their assertion." Pearce v. Am. Defender Life Ins. Co., 74 N.C. App. 620, 626, 330 S.E.2d 9, 13 (1985) (citation and quotations omitted), rev'd on other grounds, 316 N.C. 461, 343 S.E.2d 174 (1986); see Thompson v. Nw. Sec. Life Ins. Co., 44 N.C. App. 668, 673, 262 S.E.2d 397, 400 (1980). An insurer can, by either waiver or estoppel, be barred from relying on forfeiture provisions to deny coverage. Pearce, 74 N.C. App. at 626, 330 S.E.2d at 13; see, e.g., Hunter v. Jefferson Standard Life Ins. Co., 241 N.C. 593, 595–97, 86 S.E.2d 78, 80–81 (1955); Early v. Farm Bureau Mut. Auto. Ins. Co., 29 S.E.2d 558, 559–60 (N.C. 1944); Durham v. Cox, 65 N.C. App. 739, 745–47, 310 S.E.2d 371, 375–76 (1984); Thompson, 44 N.C. App. at 672–73, 262 S.E.2d at 400. However, an insured cannot use waiver or estoppel to broaden a policy's coverage so as to protect the insured against risks not included in the policy's coverage terms. E.g., Pearce, 316 N.C. at 466, 343 S.E.2d at 177–78; Hunter, 241 N.C. at 595–96, 86 S.E.2d at 80; U.S. Fid. & Guar. Co. v. Country Club of Johnston Cnty., Inc., 119 N.C. App. 365, 372–73, 458 S.E.2d 734, 739 (1995); Durham, 65 N.C. App. at 744–45, 310 S.E.2d at 374–75. An

13

exception to this general prohibition may arise when an insurer defends its insured without a reservation of rights and the denial results in prejudice. E.g., Fortune Ins. Co. v. Owens, 351 N.C. 424, 431, 526 S.E.2d 463, 467 (2000); Early, 29 S.E.2d at 559–60; Nationwide Mut. Ins. Co. v. Aetna Cas. & Sur. Co., 1 N.C. App. 9, 13, 159 S.E.2d 268, 272 (1968).

Here, Walia and Mundra ask plaintiffs to defend and indemnify them against alleged liabilities that the Policies do not cover. Moreover, Walia and Mundra admit that they were aware that plaintiffs reserved the right to deny coverage. See Walia Answer ¶ 21; Mundra Answer ¶ 21; see also [D.E. 39-2]. Accordingly, the doctrines of waiver and estoppel do not bar plaintiffs from denying coverage to Walia and Mundra. See, e.g., Fortune, 351 N.C. at 431, 526 S.E.2d at 467.

Finally, Walia and Mundra argue that the doctrine of laches bars plaintiffs from bringing their declaratory judgment action. "In equity, where lapse of time has resulted in some change in the condition of the property or in the relations of the parties which would make it unjust to permit the prosecution of the claim, the doctrine of laches will be applied." Teachey v. Gurley, 199 S.E. 83, 88 (N.C. 1938); Save Our Sch. of Bladen Cnty., Inc. v. Bladen Cnty. Bd. of Educ., 140 N.C. App. 233, 235, 535 S.E.2d 906, 908–09 (2000). However, "the mere passage or lapse of time is insufficient to support a finding of laches; for the doctrine of laches to be sustained, the delay must be shown to be unreasonable and must have worked to the disadvantage, injury or prejudice of the person seeking to invoke it." Taylor v. City of Raleigh, 290 N.C. 608, 622–23, 227 S.E.2d 576, 584–85 (1976) (quotation omitted); see Save Our Sch., 140 N.C. App. at 237, 535 S.E.2d at 909. Adequate notice of an insurer's reservation of rights generally precludes an insured from alleging prejudice from the insurer's subsequent denial of coverage. See Fortune, 351 N.C. at 430–31, 526 S.E.2d at 467; cf. Mims v. Mims, 305 N.C. 41, 62, 286 S.E.2d 779, 792–93 (1982) ("For laches to bar his claim 'there must be something on his part which looks like an abandonment of the right, or

14

an acquiescence in its enjoyment by another, inconsistent with his own claim or demand.' Stith v. McKee, 87 N.C. 389, 392 (1882). No such abandonment appears here."); see also Am. Auto. Ins. Co. v. Advest, Inc., No. 08 Civ. 6488(LAK), 2009 WL 3490060, at *4 (S.D.N.Y. Oct. 28, 2009) (unpublished) (denying laches because notice of reservation of rights obviated prejudice); Admiral Ins. Co. v. Debber, 442 F. Supp. 2d 958, 970–72 (E.D. Cal. 2006) (same); All Am. Ins. Co. v. Broeren Russo Constr., Inc., 112 F. Supp. 2d 723, 729–31 (C.D. Ill. 2000) (same).

Walia and Mundra received notice of plaintiffs' reservation of rights on June 20, 2010—seven months before Dean & Gibson's withdrawal. See [D.E. 39-2]. Walia and Mundra's decision to continue to rely solely on Dean & Gibson for representation was a "calculated risk on their part." Admiral Ins., 442 F. Supp. 2d at 971. Therefore, Walia and Mundra cannot plausibly allege they were prejudiced by the denial of coverage. Accordingly, the doctrine of laches provides no comfort to Walia and Mundra.

IV.

In sum, the court DENIES Walia and Mundra's motion to amend their answers [D.E. 33], and GRANTS plaintiffs' motion for judgment on the pleadings [D.E. 40]. The Policies do not obligate plaintiffs to defend or indemnify Walia and Mundra against PW's allegations in the underlying litigation. The Clerk of Court shall close the case.

SO ORDERED. This 19 day of September 2012.

JAMES C. DEVER III
Chief United States District Judge

15